**F I L E D**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

APR 1 2 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | **05C 0809** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| | ) | |
| JEWEL FOOD STORES, INC., | ) | JUDGE KENNELLY |
| | ) | |
| | ) | |
| Defendant. | ) | MAGISTRATE JUDGE DENLOW |
| | ) | |

## CONSENT DECREE

### I. BACKGROUND

A. Plaintiff, the United States of America (Plaintiff or the United States), on behalf of the United States Environmental Protection Agency (EPA), has filed a Complaint pursuant to Section 113 (b) of the Clean Air Act (the Act), 42 U.S.C. § 7413(b), for civil penalties and injunctive relief against Defendant, Jewel Food Stores, Inc. (Jewel), for alleged violations of the commercial refrigerant repair, testing, record-keeping, and reporting requirements at 40 C.F.R. Part 82, Subpart F, §§ 82.150 - 82.166, promulgated pursuant to Subchapter VI of the Act, 42 U.S.C. §§ 7671 -7671q.

B. Subchapter VI of the Act, 42 U.S.C. §§ 7671 -7671q (National Recycling and Emission Reduction Program), implements the Montreal Protocol on Substances that Deplete the Ozone Layer, and mandates the elimination or control of emissions of substances which are known or suspected to cause or significantly contribute to harmful effects on the stratospheric

ozone layer, referred to as class I and class II substances. Section 608(a) of the Act, 42 U.S.C.

§ 7671g(a), required EPA to promulgate regulations to reduce the use and emission of such

substances to their "lowest achievable level" and to "maximize the recapture and recycling of

such substances." EPA promulgated those regulations which are codified at 40 C.F.R. Part 82,

Subpart F, §§ 82.150 - 82.166, (Subpart F Regulations) on May 14, 1993 (58 Fed. Reg. 28,712).

C. Jewel is a corporation incorporated under the laws of the State of New York. Jewel

is, inter alia, a retail grocer and owns and operates retail grocery stores in the Chicago

Metropolitan area.

D. Jewel is, or at all times relevant to this matter was, the owner and operator of the

stores listed in Appendix A (the Stores) most of which have one or more commercial

refrigeration units normally containing 50 pounds or more of "class I or class II substances" as

those terms are defined by Section 602 of the Act, 42 U.S.C. § 7671, and 40 C.F.R. § 82.104.

E. The United States contends that Jewel violated the Subpart F Regulations at the Stores

by, inter alia, failing to: (i) timely repair commercial refrigeration equipment venting class II

substances at an annualized leak rate greater than 35%; (ii) prepare a written plan to retrofit or

retire excessively leaking equipment; (iii) complete the retrofit or retirement of leaking

equipment; and/or (iv) comply with record-keeping and reporting requirements regarding such

matters as the dates and types of service or repairs to commercial refrigeration equipment, the

amount of refrigerant added, leak rates, methods used to determine leak rates; location and extent

of leaks, etc.

F. By entering into this Consent Decree, Jewel does not admit the violations alleged in

the Complaint or the allegations of the United States as set forth above and denies having

2

violated the Act.

G. The United States and Jewel have agreed that settlement of this action is in the best interest of the parties and in the public interest, and that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter. The United States and Jewel consent to the entry of this Consent Decree without the trial of any issues.

NOW THEREFORE, with the consent of the parties, and without the admission of the violations alleged in the Complaint, it is hereby ORDERED AND DECREED as follows:

## II. JURISDICTION AND VENUE

1. The Complaint states a claim upon which relief can be granted against Jewel under Section 113 of the Act, 42 U.S.C. § 7413. This Court has jurisdiction over this action and the parties hereto pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. § 1345. Venue is proper in this judicial district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. § 1391(b).

## III. APPLICABILITY

2. The provisions of this Consent Decree shall apply to and be binding upon the United States, Jewel, and Jewel's officers, employees, agents, successors, and assigns.

## IV. PURPOSE

3. The purposes of this Consent Decree are to: (a) further the goals of Subchapter VI of the Act, 42 U.S.C. §§ 7671-7671q, and EPA's Subpart F Regulations by reducing or eliminating the emissions of substances known to or suspected of destroying the stratospheric ozone layer; and (b) resolve Jewel's liability for civil penalties and injunctive relief for all violations alleged in the United States' Complaint at the Facilities, which are generally described in Paragraph I.E.

3

above, through the date of lodging of this Consent Decree.

## V. DEFINITIONS

4. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in Subchapter VI of the Act, 42 U.S.C. §§ 7671-7671q, or EPA's Subpart F Regulations, shall have the meaning assigned to them in Subchapter VI of the Act or EPA's Subpart F Regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

a. "Jewel" or "Defendant" means the Defendant Jewel Food Stores, Inc. and any of its successors or assigns.

b. "Chicago Metropolitan Area" shall mean the City of Chicago, Cook County, DuPage County, Lake County, Kane County, Kankakee County, Kendall County, McHenry County, and Will County.

c. "Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

d. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

e. "EPA" shall mean the United States Environmental Protection Agency and any of its regions, successor departments, agencies or instrumentalities of the United States.

f. "Commercial Refrigeration System(s)" shall mean any appliance containing fifty (50) or more pounds of class I or class II substances as defined by Section 602 of the Act, 42 U.S.C.

4

§ 7671, 40 C.F.R.. § 82.3, and 40 C.F.R. § 82.152, which are used to chill product display cases.

g. "Non-Ozone Depleting Refrigerant" shall mean any refrigerant which is not regulated under Subchapter VI of the Act, 42 U.S.C. §§ 7671-7671q, or EPA's Subpart F Regulations, as a class I or a class II known or suspected ozone-depleting substance, and is approved as a substitute by EPA under 40 C.F.R. Part 82, Subpart G, with such regulatory classification determined as of the date a Commercial Refrigeration System is converted to use a "Non-Ozone Depleting Refrigerant."

h. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

i. "Parties" shall mean the United States and Jewel.

j. "Plaintiff" shall mean the United States of America.

k. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

l. "The Stores" shall mean the stores owned and operated by Jewel which are listed on Appendix A to this Consent Decree.

m. "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## VI. COMPLIANCE AND INJUNCTIVE RELIEF

5. Jewel shall retrofit the Commercial Refrigeration Systems at each of the twelve stores listed in Appendix B to use Non-Ozone Depleting Refrigerants, by no later than three years from the effective date of this Consent Decree. Alternatively, for any of the twelve stores, Jewel may, in its sole discretion, close or retire a store to satisfy the requirements of this Paragraph. All refrigerant removed from the retrofitted Commercial Refrigeration Systems shall be either sent

5

for destruction in accordance with the provisions of 40 C.F.R. § 82.104(h), reclaimed as defined

in 40 C.F.R. § 82.152, by a certified reclaimer as defined in 40 C.F.R. § 82.164, or transferred in

accordance with the provisions of 40 C.F.R. § 82.154(g). If Jewel retires a Commercial

Refrigeration System, Jewel shall not use any of the retired units within any of its other stores

(except with a Non-Ozone Depleting Refrigerant) and all refrigerant from the retired units shall

be either sent for destruction in accordance with the provisions of 40 C.F.R. § 82.104(h),

reclaimed as defined in 40 C.F.R. § 82.152, by a certified reclaimer as defined in 40 C.F.R.

§ 82.152, or transferred in accordance with the provisions of 40 C.F.R. § 82.154(g). Within

thirty (30) days of the effective date of this Consent Decree, or within thirty (30) days after

completing the retrofit or closure of a Commercial Refrigeration System listed in Appendix B,

Jewel shall submit to EPA, at the addresses specified in Paragraph 35, a certification stating that

the retrofit has been completed, a description of the new equipment, the type of refrigerant used

in the new system, or that the store was closed, and documentation showing that the refrigerant

from all retrofitted or retired units was properly destroyed, reclaimed, or transferred in

accordance with this Consent Decree.

6. In any new stores it constructs in the Chicago Metropolitan Area after the effective

date of this Consent Decree, Jewel shall only install Commercial Refrigeration Units that use

Non-Ozone Depleting Refrigerants.

7. Jewel has prepared, and EPA has approved, a Refrigerant Management Compliance

Plan directed at assuring future compliance with the Subpart F Regulations at all of its stores in

the Chicago Metropolitan Area. The Refrigerant Management Compliance Plan addresses

compliance with applicable requirements at both stores that use a class I or class II refrigerant

and all stores that use an EPA-approved Non-Ozone Depleting Refrigerant, including, but not limited to, those stores listed in Appendix C. Jewel shall implement the Refrigerant Management Compliance Plan at its Chicago Metropolitan Stores. This Refrigerant Management Compliance Plan is attached as Appendix D.

8. In addition to the conversion requirements in Paragraph 5, by December 31, 2007, Jewel shall retrofit the Commercial Refrigeration Systems to use an EPA-approved Non-Ozone Depleting Refrigerant in either (1) 75% of its stores which have completed or commenced major remodeling (meaning costs in excess of $2.5 million per store) through December 31, 2007; or (2) twenty-five (25) stores listed in Appendix A, whichever number is greater.

9. Within thirty (30) days after Jewel determines, or has information which demonstrates, that any unit, as defined below, of its Commercial Refrigeration Systems that uses a class I or class II refrigerant is (1) leaking such that the loss of refrigerant will exceed 35% of the total charge during a 12-month period, and (2) there have been more than three separate leak rate exceedances in any 12-month period after the effective date of this Consent Decree, Jewel shall retrofit that unit to use an EPA-approved Non-Ozone Depleting Refrigerant or shall retire that unit from service. For purposes of this provision, during the 30-day period following the date that refrigerant was added to a unit resulting in a leak rate of 35%, Jewel shall conduct and verify repairs of the leak, and any additional refrigerant losses during the 30-day repair period shall be considered as one leak event. For purposes of this provision, a "unit" shall be defined as a single compressor system or compressor rack, which consists of multiple compressors piped in parallel. If Jewel retires a Commercial Refrigeration System, Jewel shall not use any of the retired units within any of its other stores and all refrigerant from the retired units shall be sent for destruction

7

in accordance with the provisions of 40 C.F.R. § 82.104(h), reclaimed as defined in 40 C.F.R.
§ 82.152, by a certified reclaimer as defined in 40 C.F.R. § 82.164, or transferred in accordance
with the provisions of 40 C.F.R. § 82.154(g).

      10.    Following receipt of any report, plan, or other submission by Jewel under this
Consent Decree, EPA may do one of the following, in writing: (i) approve all of or any portion of
the submission; (ii) approve all or part of the submission upon specified conditions; (iii)
disapprove all of or any portion of the submission, notifying Jewel of deficiencies in the
submission and granting Jewel additional time within which to correct the deficiencies; (iv)
modify the submission to correct deficiencies; or (v) reject all of or any portion of the
submission.

## VII. CIVIL PENALTY

      11. No later than thirty (30) Days after the effective date of this Consent Decree, Jewel
shall pay to the United States a civil penalty pursuant to Section 113 of the Act, 42 U.S.C. 7413,
in the amount of $100,000 (the Civil Penalty) by Electronic Funds Transfer (EFT) to the United
States Department of Justice, in accordance with current EFT procedures, referencing U.S.A.O.
File Number 2004V00939 and DOJ case number 90-5-2-1-08098.  Payment shall be made in
accordance with instructions provided by the U.S. Attorneys Office in the Northern District of
Illinois.  The costs of such EFT shall be paid by Jewel.  Any funds received after 11:00 a.m.
(Eastern Time) shall be credited on the next business day.  Jewel shall provide notice of payment,
referencing the U.S.A.O. File Number 2004V00939 and DOJ Case Number 90-5-2-1-08098, and
the civil action case name and number, to the United States and EPA in accordance with
Paragraph 35.

8

12. No amount of the Civil Penalty shall be deductible or otherwise used to reduce Jewel's federal or state tax obligations.

## VIII.  REPORTING OBLIGATIONS

13.    By no later than the anniversary of the effective date of this Consent Decree, for each year that this Consent Decree is in effect, Jewel shall submit to EPA, at the addresses specified in Paragraph 35, a report certified by Jewel in accordance with Paragraph 34 which provides the following for the twelve month period that ended one month prior to the reporting date:

   a.  A status report regarding all work required under Paragraphs 5, 6, 8 and 9; and

   b.  A current copy of the Refrigerant Management Compliance Plan;

   c.  An affirmative statement regarding Jewel's compliance or noncompliance with EPA's Subpart F Regulations with respect to each Store which used any class I or class II refrigerant during the prior twelve month reporting period.  After a system has been converted to use a Non-Ozone Depleting Refrigerant, Jewel shall affirmatively state in each report whether there has been any change in the regulatory status of the system during the prior twelve month reporting period;

   d.  An updated list of any store closings, and any changes in, or transfers of, ownership for any of the stores listed in Appendices A, B and C;  and,

   e.  The name of the Refrigerant Manager or designee.

## IX.  STIPULATED PENALTIES

14.  Jewel shall pay stipulated penalties to the United States for each failure by Jewel to comply with the terms of this Consent Decree.  Stipulated penalties will be calculated as follows:

9

a. For failure to satisfy the terms and conditions of Paragraph 5 of this Consent Decree - $1,000 per day per store until the conditions of Paragraph 5 have been met for that store;

b. For failure to satisfy the terms and conditions of Paragraph 8 for any individual store subject to Paragraph 8 by January 1, 2008 - $1,000 per day per store until the retrofit or closure is completed;

c. For failure to complete any retrofit or retirement of any Commercial Refrigeration Systems in accordance with Paragraph 9 - $1,000 per day per system until the replacement is completed;

d. For failure to implement the Refrigerant Management Compliance Plan as required in Paragraph 7 - $500 per day per store, for each day of noncompliance with the Plan;

e. For failure to submit any reports required under Paragraph 13, $250 per day per report until submitted;

f. For failure to pay the civil penalty when due as set forth in Paragraph 11, $2,500 per day until paid;

g. For failure to comply with the notification obligations set forth in Paragraph 21 (if invoking the force majeure provisions), $125 per day per report until submitted; and

h. For failure to certify any report or submission in accordance with Paragraph 34, $125 per day per report or submission until certified.

15. Jewel shall pay stipulated penalties upon written demand by the United States no later than thirty (30) days after receiving the United States' demand. Stipulated penalties shall be paid to the Plaintiff in the same manner set forth in Section VII (Civil Penalty) of this Consent

10

Decree.

16. The payment of stipulated penalties shall not alter in any way Jewel's obligation to complete the performance of the activities required under this Consent Decree.

17. If Jewel fails to pay stipulated penalties when due, the United States may institute proceedings to collect the stipulated penalties, as well as interest at the rate established by the United States Department of Treasury pursuant to 31 U.S.C. § 3717 (as of the due date) for any period after the due date.

18. EPA may, in its sole discretion, not subject to judicial review, waive or reduce stipulated penalties as the facts, circumstances, or equities warrant.

## X. RIGHT OF ENTRY

19. Any authorized representative of EPA, upon presentation of credentials, shall have a right of entry upon the premises of any of the Stores listed on Appendices A, B and C for the purpose of monitoring compliance with the provisions of this Consent Decree, including inspecting plant equipment and inspecting and copying all records required to be maintained by Jewel under this Consent Decree. Jewel shall retain such records as are required pursuant to this Consent Decree for a period of five years following their creation. Nothing in this Consent Decree shall limit the authority of EPA to require tests and conduct inspections under Section 114 of the Act, 42 U.S.C. § 7414, or any other authority.

## XI. FORCE MAJEURE

20. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Jewel, its contractors, or any entity controlled by Jewel that delays or prevents the performance of any obligation under this Consent Decree despite

Jewel's best efforts to fulfill the obligation. "Best efforts" include using best efforts to anticipate any potential force majeure event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include Jewel's financial inability to perform any obligation under this Consent Decree.

21.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, as to which Jewel intends to assert a claim of force majeure, Jewel shall provide notice in writing, as provided in Section XV (Notices and Submissions) of this Consent Decree, within seven (7) days of the time Jewel first knew of, or by the exercise of due diligence should have known of, the event. Such notification shall include an explanation and description of the reasons for the delay; the anticipated duration of the delay; a description of all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and Jewel's rationale for attributing such delay to a force majeure event. Failure to comply with the above requirements shall preclude Jewel from asserting any claim of force majeure. Jewel shall be deemed to know of any circumstance of which Jewel, its contractors, or any entity controlled by Jewel knew or should have known.

22.     Jewel shall have the burden of proving, by a preponderance of the evidence, that each event described in the preceding Paragraph was a force majeure event; that Jewel gave the notice required by the preceding Paragraph; that Jewel took all reasonable steps to prevent or minimize any delay caused by the event; and that any period of delay it claims was attributable to the force majeure event was caused by that event.

12

23.     If the Parties agree that a delay in Jewel's performance of an obligation under this Consent Decree has been caused by a force majeure event, the Parties shall stipulate to an extension of time for Jewel's performance of the affected compliance requirement by a period not exceeding the delay actually caused by such event. In such circumstances, the appropriate modification shall be made pursuant to Paragraph 46 where the modification is to a term of this Consent Decree or is a material modification of any Appendix to this Consent Decree. In the event the Parties cannot agree, the matter shall be resolved in accordance with Section XII (Dispute Resolution). An extension of time for performance of the obligations affected by a force majeure event shall not, of itself, extend the time for performance of any other obligation.

## XII.  DISPUTE RESOLUTION

24.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, such procedures shall not apply to actions by Plaintiff to enforce obligations of Jewel that have not been disputed in accordance with this Section.

25.     Any dispute which arises under or with respect to this Consent Decree shall first be the subject of informal negotiations. The period of informal negotiations shall not exceed twenty (20) days from the time Jewel sends Plaintiff a written Notice of Dispute in accordance with Section XV (Notice and Submission of Documents), unless that period is modified by written agreement. Such Notice of Dispute shall state clearly the matter in dispute. The failure to submit a Notice of Dispute within ten days from the date upon which the issue in dispute first arises waives Jewel's right to invoke dispute resolution under this Section.

13

26. If the Parties cannot resolve a dispute by informal negotiations pursuant to the preceding Paragraph, then the position advanced by Plaintiff shall be considered binding unless, within fifteen (15) work days after the conclusion of the informal negotiation period, Jewel invokes formal dispute resolution procedures by serving on the Plaintiff, in accordance with Section XV (Notice and Submission of Documents), a written Statement of Position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation.

27. Within fifteen (15) working days after receipt of Jewel's Statement of Position, Plaintiff will serve on Jewel its Statement of Position, including any supporting factual data, analysis, opinion or documentation. Within ten (10) working days after receipt of Plaintiff's Statement of Position, Jewel may submit a Reply.

28. The Director of the Air Division in EPA Region 5 will issue a Final Decision on the matter in dispute. Jewel may seek review of the Final Decision only by filing a motion for review by this Court within fifteen (15) working days of receipt of EPA's Final Decision. In addition to containing the supporting factual data, analysis, opinion, and documentation upon which Jewel relies, the motion shall describe the history of the matter in dispute, the relief requested, and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree. The standard of judicial review for disputes under this Section shall be governed by applicable principles of law.

29. The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Jewel under this Consent Decree, not directly in dispute, unless Plaintiff agrees or the Court rules otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment

14

shall be stayed pending resolution of the dispute. To the extent Jewel does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XIII. EFFECT OF CONSENT DECREE

30. Jewel's payment of the Civil Penalty as set forth in Paragraph 11 and compliance with the requirements of Section VI (Compliance and Injunctive Relief) shall constitute a full and complete settlement and shall be in satisfaction of the United States' claim for civil penalties and injunctive relief under Section 113(b) of the Act, 42 U.S. C. § 7314(b), with regard to the violations alleged in the United States' Complaint at the Stores and as described in the Paragraph I.E. of this Consent Decree, through date of the lodging of this Consent Decree.

31. This Consent Decree does not pertain to any matters except as expressly set forth herein. The United States reserves any claims for criminal liability, if any, for the matters addressed in this Consent Decree.

## XIV. EFFECTIVE DATE/FINAL JUDGMENT

32. The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

33. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between the United States and Jewel. The United States shall be deemed a judgment creditor for purposes of any unpaid amounts of the civil penalty and any stipulated penalties and interest.

## XV. NOTICE AND SUBMISSION OF DOCUMENTS

34. Whenever under the terms of this Consent Decree a report, statement, or other document is designated as requiring "verification" or "certification," it shall be certified by a knowledgeable officer of the company under penalty of law that the information contained in such report, statement, or document is true, accurate, and complete by signing the following statement:

> I certify under penalty of law that I have examined and am familiar with information submitted in this document and all attachments and that, based on my inquiry of those individuals immediately responsible for obtaining the information, I believe that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment.

35. Whenever under the terms of this Consent Decree any notice is to be given, or a report or other document is to be forwarded, by one party to another, it shall be directed to the following addresses unless the sending party has been advised in writing by the receiving party that such notice and reports should be forwarded to a different individual or address. Notifications to or communications shall be deemed submitted on the date they are either: hand-delivered; postmarked and sent by certified mail, return receipt requested; sent by facsimile; or sent by overnight courier service. Any such materials shall include a reference to the name, caption and number of this action.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Post Office Box 7611
Ben Franklin Station
Washington, D.C. 20044
DOJ # 90-5-2-1-08098

16

<u>As to EPA:</u>

Director Air Enforcement Division
U.S. EPA
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Mail Code 2242-A
Washington, D.C. 20460

Compliance Tracker
Air Enforcement Branch, AE-17J
U.S. EPA, Region 5
77 W. Jackson Blvd.
Chicago, IL 60604-3507

     and

Cynthia A. King
Office of Regional Counsel
U.S. EPA, Region 5
C-14J
77 W. Jackson Blvd.
Chicago, IL 60604-3507

<u>As to the Defendant:</u>

Ronald T. Mendes, Esq.
Vice President, Jewel Food Stores, Inc.
250 ParkCenter Blvd.
Boise, Idaho 83726

### XVI. <u>RETENTION OF JURISDICTION/TERMINATION OF DECREE</u>

36. This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

37. This Consent Decree shall terminate after Jewel has fulfilled all of its obligations under this Consent Decree. To terminate this Consent Decree, Jewel shall submit a certification to the United States, at the addresses set forth in Paragraph 35, stating that Jewel has fully

complied with all of the requirements of this Consent Decree. Within forty-five (45) days after receiving such a certification the United States shall either: (a) file the certification with the Court together with a notice that the United States does not object to the termination of the Consent Decree; or (b) notify Jewel in writing that the United States does not agree that Jewel has complied with all the requirements of this Consent Decree. If the United States objects to the termination of the Consent Decree, the Parties shall attempt to resolve the disagreement within thirty (30) days after Jewel receives the notice of disagreement from the United States. If the Parties are unable to resolve the disagreement within those thirty (30) days, Jewel may petition the Court to resolve the disagreement.

## XVII. INTEGRATION/APPENDICES

38. This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree and its appendices.

39. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is a list of Jewel stores in the Chicago Metropolitan Area that uses a Class I or Class II refrigerant as of the date of Jewel's signature on this Consent Decree;

"Appendix B" is the list of 12 Stores where Commercial Refrigeration Systems will be replaced or the store will be closed.

"Appendix C" is the list of the stores that currently use an EPA-approved Non-Ozone Depleting Refrigerant.

18

"Appendix D" is Jewel's approved Refrigerant Management Compliance Plan.

## XVIII. <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

40. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Jewel consents to the entry of this Consent Decree without further notice.

41. If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XIX. <u>SIGNATORIES/SERVICE</u>

42. The undersigned representative of Jewel and the Chief or Deputy Chief, Environmental Enforcement Section, Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

43. Jewel hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Jewel in writing that it no longer supports entry of the Consent Decree.

44. Jewel shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of Jewel with respect to all matters arising under or relating to this Consent Decree. Jewel hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules

of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that Jewel need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX. GENERAL PROVISIONS

45. Each party to this action shall bear its own costs and attorneys' fees.

46. There shall be no modification of this Consent Decree without written agreement by both Parties which must be filed with the Court. Material modifications of this Consent Decree may be made only with the approval of the Court.

SO ENTERED THIS 1st DAY OF April, 2005

UNITED STATES DISTRICT JUDGE
Northern District of Illinois

20

U.S. v. Jewel Food Stores, Inc. (N.D. Ill.)

FOR PLAINTIFF, THE UNITED STATES OF AMERICA:

Tom Sansonetti/c;                           Date 2/4/05
Thomas L. Sansonetti
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
10th & Pennsylvania Avenue, N.W.
Washington, DC 20530


Steven D. Ellis                            Date Feb. 7, 2005
Steven D. Ellis
Attorney, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044


UNITED STATES ATTORNEY

PATRICK J. FITZGERALD
United States Attorney


By: Lara Kaufmann                          Date 2|8|05
By: Lara Kaufmann
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL 60604
Telephone: (312) 353-1996

U.S. v. v. Jewel Food Stores, Inc. (N.D. Ill.)

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Date  12-23-04

Bharat Mathur
Acting Regional Administrator, Region 5
U.S. Environmental Protection Agency
77 West Jackson Blvd.
Chicago, Il 60604-3590

U.S. v. Jewel Food Stores, Inc. (N.D. Ill.)

FOR DEFENDANT, JEWEL FOOD STORES, INC.:


Ronald T. Mendes, Esq.
Vice President, Jewel Food Stores, Inc.

Date December 6 2004

Appendix A

Jewel Food Stores Locations Containing Regulated Class I and II Refrigerants

| | ABS No. | Street No. | Street Address | City / Illinois / Zip Code |
|---|---|---|---|---|
| 1. | 3068 | 4 | E. Ogden Avenue | Westmont 60559 |
| 2. | 3469 | 16 | S. Waukegan Road | Deerfield 60015 |
| 3. | 3220 | 20 | W. Biesterfield Rd. | Elk Grove Village 60007 |
| 4. | 3191 | 20 | S. Weber Rd. | Romeoville 60446 |
| 5. | 3230 | 30 | Danada Square, W. | Wheaton 60187 |
| 6. | 3284' | 33 | St. Charles Rd. | Villa Park, IL 60181 |
| 7. | 3445 | 45 | Plum Grove Road | Palatine 60067 |
| 8. | 3479 | 79 | McHenry Road | Buffalo Grove 60089 |
| 9. | 3181' | 87 | W. 87th Street | Chicago 60620 |
| 10. | 3256 | 103 | S. Randall Road | Algonquin 60102 |
| 11. | 3214 | 114 | Willow Street | Wheaton 60187 |
| 12. | 3219 | 119 | Randall Road | Batavia 60510 |
| 13. | 3422 | 122 | N. Vail Street | Arlington Hts. 60005 |
| 14. | 3276 | 125 | E. Stearns Road | Bartlett 60103 |
| 15. | 3110 | 126 | E. Boughton Road | Bolingbrook 60440 |
| 16. | 3294 | 140 | W. Lake Street | Addison 60101 |
| 17. | 3346 | 153 | Schiller Street | Elmhurst 60126 |
| 18. | 3338 | 177 | W. Roosevelt Road | West Chicago 60185 |
| 19. | 3084 | 199 | Brookforest | Shorewood 60431 |
| 20. | 3102 | 234 | E. Veterans Parkway | Yorkville 60560 |
| 21. | 3003 | 303 | Holmes Avenue | Clarendon Hills 60514 |
| 22. | 3072' | 306 | E. 144th Street | Dolton 60419 |
| 23. | 3250 | 350 | Lake Marion Road | Carpentersville 60110 |
| 24. | 3052 | 352 | LaGrange Road | Frankfort 60423 |
| 25. | 3444" | 410 | Eastwood Dr. | Woodstock, IL 60098 |
| 26. | 3288 | 438 | W. Madison Street | Oak Park 60302 |
| 27. | 3478 | 440 | E. Rand Rd. | Arlington Hts. 60004 |
| 28. | 3043 | 443 | E. 34th Street | Chicago 60616 |
| 29. | 3156 | 446 | S. Washington | Kankakee 60901 |
| 30. | 3483 | 452 | Lakehurst Road | Waukegan 60085 |
| 31. | 3161 | 455 | Main Street | Bourbonnais 60914 |
| 32. | 3481 | 481 | Busse Highway | Park Ridge 60068 |
| 33. | 3485 | 485 | Ela Road | Lake Zurich 60047 |
| 34. | 3515 | 547 | Liberty Street | Wauconda 60084 |
| 35. | 3368 | 550 | N. State St. | Chicago 60610 |
| 36. | 3340 | 599 | E. Roosevelt Road | Glen Ellyn 60137 |
| 37. | 3496 | 696 | Northwest Hwy. | Cary 60013 |
| 38. | 3246 | 750 | Army Trail Rd. | Carol Stream 60188 |
| 39. | 3063 | 763 | E. 162nd Street | South Holland 60473 |
| 40. | 3290' | 800 | W. North Ave. | Melrose Park, IL 60160 |
| 41. | 3473 | 819 | S. Elmhurst Road | Des Plaines 60016 |
| 42. | 3432 | 900 | E. Rollins Road | Round Lake Beach 60073 |
| 43. | 3516 | 922 | N. Green Bay Rd. | Waukegan 60085 |
| 44. | 3244 | 944 | S. York Road | Elmhurst 60126 |
| 45. | 3466 | 966 | Rt. 59 | Antioch 60002 |
| 46. | 3291 | 1040 | Summit Avenue | Elgin 60120 |
| 47. | 3316 | 1069 | Roselle Road | Hoffman Estates 60172 |
| 48. | 3428 | 1128 | Chicago Avenue | Evanston 60202 |
| 49. | 3048 | 1148 | Ogden Avenue | Downers Grove 60515 |
| 50. | 3308 | 1151 | S. Roselle Road | Schaumburg 60193 |
| 51. | 3056 | 1156 | Maple Avenue | Lisle 60532 |
| 52. | 3240 | 1157 | Eola Road | Aurora 60504 |
| 53. | 3278 | 1177 | S. Main Street | Lombard 60148 |
| 54. | 3210 | 1210 | N. Clark Street | Chicago 60610 |
| 55. | 3344 | 1220 | S. Ashland Avenue | Chicago 60608 |
| 56. | 3345 | 1224 | S. Wabash | Chicago 60605 |
| 57. | 3111 | 1227 | Naper Blvd. | Naperville 60540 |
| 58. | 3306 | 1250 | W. Main Street | West Dundee 60118 |
| 59. | 3270 | 1270 | N. Lake Str. | Aurora 60506 |
| 60. | 3406 | 1300 | S. Milwaukee Avenue | Libertyville 60048 |
| 61. | 3241 | 1341 | N. Paulina Street | Chicago 60622 |
| 62. | 3421' | 1400 | 21st St. | Zion, IL 60099 |
| 63. | 3486 | 1485 | Palatine Road | Hoffman Estates 60195 |
| 64. | 3425 | 1500 | Lee Street | Des Plaines 60016 |
| 65. | 3488 | 1501 | S. Lake Street | Mundelein 60060 |
| 66. | 3471 | 1517 | Sheridan Road | Wilmette 60091 |
| 67. | 3313 | 1660 | Larkin Avenue | Elgin 60120 |

Appendix A
Jewel Food Stores Locations Containing Regulated Class I and II Refrigerants

| | ABS No. | Street No. | Street Address | City / Illinois / Zip Code |
|---|---|---|---|---|
| 68. | 3266 | 1710 | N. Kostner Avenue | Chicago 60639 |
| 69. | 3252 | 1952 | Galena Blvd. | Aurora 60506 |
| 70. | 3283 | 2031 | N. Main Street | Wheaton 60187 |
| 71. | 3331' | 2073 | Prairie St. | St. Charles, IL 60174 |
| 72. | 3228 | 2128 | S. Mannheim Road | Westchester 60154 |
| 73. | 3264 | 2164 | Bloomingdale Road | Glendale Hts. 60139 |
| 74. | 3062 | 2317 | 75th Street | Woodridge 60517 |
| 75. | 3183 | 2320 | Burr Oak | Blue Island 60406 |
| 76. | 3090 | 2500 | Lincoln Highway | Olympia Fields 60461 |
| 77. | 3216' | 2501 | Schaumburg Road | Schaumburg 60172 |
| 78. | 3138 | 2540 | U.S. Route 30 | Oswego 60543 |
| 79. | 3491 | 3000 | Kirchoff Road | Rolling Meadows 60008 |
| 80. | 3232 | 3033 | S. Halsted Street | Chicago 60608 |
| 81. | 3222† | 3120 | N. Pulaski | Chicago, IL 60641 |
| 82. | 3114 | 3128 | W. 103rd Street | Chicago 60655 |
| 83. | 3159 | 3153 | W. 183rd Street | Homewood 60430 |
| 84. | 3167 | 3220 | S. Chicago Road | So. Chicago Hts. 60411 |
| 85. | 3501 | 3400 | N. Western Avenue | Chicago |
| 86. | 3470' | 3570 | N. Elston Avenue | Chicago 60618 |
| 87. | 3430 | 3630 | N. Southport | Chicago 60613 |
| 88. | 3302 | 3644 | S. Archer Avenue | Chicago 60608 |
| 89. | 3139 | 3940 | E. 106th Street | Chicago 60617 |
| 90. | 3442 | 4042 | W. Foster Avenue | Chicago 60630 |
| 91. | 3468' | 4222 | Elm St. | McHenry, IL 60050 |
| 92. | 3454 | 4250 | N. Lincoln Avenue | Chicago 60618 |
| 93. | 3455 | 4355 | N. Sheridan Road | Chicago 60613 |
| 94. | 3157 | 4650 | W. 103rd Street | Oak Lawn 60453 |
| 95. | 3282 | 4729 | N. Central Avenue | Chicago 60630 |
| 96. | 3280‡‡ | 5129 | Belmont | Chicago, IL 60641 |
| 97. | 3170 | 5320 | S. Pulaski | Chicago 60632 |
| 98. | 3443 | 5343 | N. Broadway | Chicago 60640 |
| 99. | 3407 | 5516 | N. Clark Street | Chicago 60640 |
| 100. | 3163 | 5616 | W. 159th Street | Oak Forest 60452 |
| 101. | 3484' | 5667 | W. Touhy Ave. | Niles 60714 |
| 102. | 3057 | 6057 | S. Western Avenue | Chicago 60636 |
| 103. | 3721 | 6107 | S. Archer Ave. | Chicago 60638 |
| 104. | 3047 | 6215 | S. Main Street | Downers Grove 60515 |
| 105. | 3224 | 6430 | W. Irving Park Rd. | Chicago 60634 |
| 106. | 3258‡ | 6505 | W. Diversey | Chicago, IL 60636 |
| 107. | 3236 | 7036 | Roosevelt Road | Oak Park 60304 |
| 108. | 3049 | 7127 | W. 127th Street | Palos Heights 60463 |
| 109. | 3254 | 7201 | W. 24th Street | North Riverside 60546 |
| 110. | 3123 | 7335 | S. Cass Avenue | Darien 60561 |
| 111. | 3223 | 7525 | W. Lake Street | River Forest 60305 |
| 112. | 3030 | 7530 | S. Stony Island | Chicago 60649 |
| 113. | 3427 | 8203 | Golf Road | Niles 60714 |
| 114. | 3429 | 8730 | W. Dempster Street | Niles 60714 |
| 115. | 3086 | 8801 | S. Ridgeland Avenue | Oak Lawn 60453 |
| 116. | 3176 | 9400 | S. Ashland Avenue | Chicago 60620 |
| 117. | 3029 | 9528 | S. Roberts Rd. | Hickory Hills 60457 |
| 118. | 3160 | 9652 | W. 131st Street | Palos Park 60464 |
| 119. | 3257 | 10203 | W. Grand Avenue | Franklin Park 60131 |
| 120. | 3089 | 11414 | S. Halsted Street | Chicago 60628 |
| 121. | 3098 | 12001 | S. Crawford Avenue | Alsip 60803 |
| 122. | 3394 | 13200 | Village Green Drive | Huntley 60142 |
| 123. | 3190 | 13460 | S. Rte. 59 | Plainfield 60544 |
| 124. | 3720 | 16625 | W. 159th | Lockport 60441 |
| 125. | 3165 | 17117 | S. Harlem Avenue | Tinley Park 60477 |
| 126. | 3192 | 17930 | S. Wolf Rd. | Orland Park 60467 |

'   This store has been retrofitted to use of non-ODS, and also appears in Appendix C.
"   This store has been closed and replaced with a new store number 3503 utilizing non-ODS, which is listed in Appendix C
†   This store was closed 7/21/04
‡   This store has been closed and replaced with a new store number 3349 utilizing non-ODS, which is listed in Appendix C
‡‡   This store has been closed and replaced with a new store number 3350 utilizing non-ODS, which is listed in Appendix C

Appendix B
Jewel Stores to Close or Convert to Non-Ozone Depelting Substances

|  | ABS No. | Street No. | Street Address | City / Illinois / Zip Code |
|---|---|---|---|---|
| 1. | 3048 | 1148 | Ogden Ave. | Downers Grove, IL 60515 |
| 2. | 3049 | 7127 | W. 127th St. | Palos Heights, IL 60463 |
| 3. | 3063 | 763 | E. 162nd St. | South Holland, IL 60473 |
| 4. | 3072† | 306 | E. 144th St. | Dolton, IL 60419 |
| 5. | 3110' | 126 | #. Boughton | Bolingbrook, IL 60439 |
| 6. | 3139 | 3940 | E. 106th | Chicago, IL 60617 |
| 7. | 3156 | 446 | Washington | Kankakee, IL 60901 |
| 8. | 3181† | 87 | West 87th St. | Chicago, IL 60620 |
| 9. | 3232 | 3033 | S. Halsted | Chicago, IL 60608 |
| 10. | 3280" | 5129 | Belmont | Chicago, IL 60641 |
| 11. | 3470† | 3570 | N. Elston | Chicago, IL 60618 |
| 12. | 3484† | 5667 | W. Touhy Ave. | Niles, IL 60714 |

'     This store should be deleted (System has less than a 50lb charge)

"     This store closed (7/12/03). Replaced with a new store #3350 utilizing a non-ODS which appears in Appendix C

†     This store has been retrofitted to use non-ODS, and appears in Appendix C.

Appendix C
## Jewel Food Stores Locations Containing Non-Ozone Depleting Refrigerants

| | ABS No. | Street No. | Street Address | City / Illinois / Zip Code |
|---|---|---|---|---|
| 1. | 3284 | 33 | St. Charles Road | Villa Park 60181 |
| 2. | 3181 | 87 | W. 87th Street | Chicago 60620 |
| 3. | 3185 | 127 | E. Ogden | Naperville 60563 |
| 4. | 3503 | 145 | S. Eastwood Drive | Woodstock 60098 |
| 5. | 3451 | 150 | West Main Street | Barrington 60010 |
| 6. | 3268 | 217 | Irving Park Road | Streamwood 60103 |
| 7. | 3072 | 306 | E 144th Street | Dolton 60410 |
| 8. | 3476 | 333 | E. Euclid Avenue | Mt. Prospect 60056 |
| 9. | 3341 | 343 | W. Irving Park Road | Wood Dale 60190 |
| 10. | 3343 | 375 | Randall Road | South Elgin 60177 |
| 11. | 3456 | 411 | N. Greenbay Road | Wilmette 60091 |
| 12. | 3474 | 423 | E. Dundee | Palatine 60067 |
| 13. | 3178 | 475 | N. Nelson Road | New Lenox 60451 |
| 14. | 3265 | 507 | E. Woodlawn | LaGrange Park 60526 |
| 15. | 3260 | 652 | Kirk Road | St. Charles 60174 |
| 16. | 3290 | 800 | W. North Ave. | Melrose Park 60160 |
| 17. | 3464 | 885 | E. Belvidere Road | Grayslake 60030 |
| 18. | 3490 | 890 | N. Western Avenue | Lake Forest 60045 |
| 19. | 3013 | 1200 | W. Boughton Road | Bolingbrook 60440 |
| 20. | 3182 | 1202 | State Street | Lemont 60439 |
| 21. | 3453 | 1350 | S. Route 12 | Fox Lake 60020 |
| 22. | 3421 | 1400 | 21st Street | Zion 60099 |
| 23. | 3074 | 1401 | W. Jefferson | Joliet 60431 |
| 24. | 3124 | 1537 | N. Larkin Street | Joliet 60431 |
| 25. | 3459 | 1600 | Deerfield Road | Highland Park 60035 |
| 26. | 3092 | 1655 | E. 95th Street | Chicago 60617-4707 |
| 27. | 3059 | 1759 | W. Ogden | Naperville 60540 |
| 28. | 3461 | 1860 | S. Arlington Heights Road | Arlington Heights 60005 |
| 29. | 3331 | 2073 | Prairie Street | St. Charles 60174 |
| 30. | 3080 | 2480 | Rte 59 | Plainfield 60544 |
| 31. | 3487 | 2485 | Howard Street | Evanston 60202 |
| 32. | 3216 | 2501 | Schaumburg Road | Schuamburg 60172 |
| 33. | 3426 | 2502 | Waukegan Road | Glenview |
| 34. | 3349 | 2520 | N. Narragansett Ave. | Chicago 60707 |
| 35. | 3519 | 2775 | Pfingsten Road | Glenview 60025 |
| 36. | 3058 | 2855 | W. 95th Street | Naperville 60564 |
| 37. | 3441 | 2940 | N. Ashland Avenue | Chicago 60657 |
| 38. | 3424 | 3124 | N. Lewis Avenue | Waukegan 60087 |
| 39. | 3514 | 3531 | N. Broadway | Chicago 60657 |
| 40. | 3470 | 3570 | N. Elston Avenue | Chicago 60618 |
| 41. | 3518 | 4222 | Elm Street | McHenry 60050 |
| 42. | 3262 | 4660 | W. Irving Park Road | Chicago 60641 |
| 43. | 3477 | 4734 | N. Pueblo | Chicago 60656 |
| 44. | 3350 | 5129 | W. Belmont | Chicago 60641 |
| 45. | 3154 | 5545 | Brainard Avenue | Countryside 60525 |
| 46. | 3484 | 5667 | W. Touhy Avenue | Niles 60714 |
| 47. | 3517 | 6140 | Northwest Hwy. | Crystal Lake 60014 |
| 48. | 3405 | 6509 | Grand Avenue | Gurnee 60031 |
| 49. | 3103 | 7122 | W. 40th Street | Stickney 60402 |
| 50. | 3296 | 7342 | W. Foster Avenue | Chicago 60656 |
| 51. | 3446 | 7900 | N. Milwaukee Avenue | Niles 60714 |
| 52. | 3060 | 7910 | S. Cicero Avenue | Burbank 60459 |
| 53. | 3051 | 9350 | W. 159th Street | Orland Park 60462 |
| 54. | 3107 | 9424 | S. Pulaski Road | Oak Lawn 60453 |
| 55. | 3465 | 9449 | Skokie Blvd. | Skokie 60076 |
| 56. | 3188 | 17705 | S. Halsted Street | Homewood 60430 |

12/8/2004

# REFRIGERANT MANAGEMENT COMPLIANCE PLAN
# JEWEL FOODS STORES, INC.

### A.  Regulatory Background and Company Policy

Pursuant to Section 114(a) of the Clean Air Act and its amendments, the Environmental
Protection Agency (EPA) requires owners/operators of regulated refrigeration systems to
follow strict measures to reduce or eliminate refrigerant emissions to the atmosphere.
"Regulated Systems" (both commercial refrigeration and air conditioning) are those
which exceed 50 pound full charge capacity and contain a Class I or Class II refrigerant[1].
The regulations affect a variety of operational, maintenance, and recordkeeping practices.
Failure to comply with these EPA regulations can result in fines of up to $32,500 per day
per violation.  Intentional violations can result in criminal penalties.

It is Jewel's policy to fully comply with the EPA refrigerant regulations.  All known
leaks shall be promptly addressed in accordance with a strict repair timeline (see Section
G).  Only qualified technicians certified in accordance with EPA regulations shall service
Jewel refrigeration systems.

Consistent with the Clean Air Act and a Consent Decree entered into between USEPA
and Jewel Foods, Inc. ("Jewel"), Jewel has developed this Refrigerant Management
Compliance Plan ("Plan") for implementation during the term of the Consent Decree and,
except as specifically noted herein, it applies to Jewel stores with commercial
refrigeration systems with a charge of 50 pounds or more of refrigerant, owned by Jewel
in the Chicago metropolitan area (See Appendices A, B and C of Consent Decree).  The
Plan has varying requirements depending on whether a unit uses Class I or Class II
refrigerant, or uses non-ozone depleting substances ("non-ODS").  This Plan has been
reviewed and approved by EPA as part of a Consent Decree.

### B.  Refrigerant Manager Designations

Each Store in the Chicago metropolitan area shall be overseen by a Refrigerant Manager.
The Refrigerant Manager is the Director of Store Maintenance at the Melrose Park, IL
Division Office or his designee.  All Store Directors are responsible for assisting the
Refrigeration Manager as needed or requested to ensure compliance with this Plan.

### C.  Equipment Inventory

The Refrigerant Manager will maintain a refrigerant system inventory for each of the
open and operating stores in the Chicago metropolitan area using Form 1 (See
Attachment A).  This inventory includes the following information:

---

[1] Class I refrigerants are those which consist in part, or whole, of chlorofluorocarbons (CFCs).
Class II refrigerants are those which contain hydrochlorofluorocarbons (HCFCs).  Class I and II
refrigerants are also known as Ozone Depleting Substances (ODS).  Common Class I refrigerant
examples used in the supermarket industry are R-502 and R-12.  Class II supermarket industry
examples include, but are not limited to, R-22, R-402, and R-408A.

1.    The location of each system (i.e. store #)
2.    A specific designator for each system (i.e. rack #, model # or serial #)
3.    The type of refrigerant in each system
4.    The quantity of refrigerant each system is estimated to hold when fully charged, as that term is defined in 40 C.F.R. Subpart F

If a leak is identified or suspected as evidenced by the need to add refrigerant the Refrigerant Manager will maintain service records for regulated system (using Form 2, See Attachment B)[2]. Completed service records shall include the following information:

1.    Specific leak location(s) and component that is leaking
2.    Date of service
3.    Type of refrigerant added
4.    Amount of refrigerant added
5.    Date the refrigerant was added
6.    Leak rate calculations (as determined pursuant to Section F of this Plan)
7.    Type of repair performed
8.    Initial repair verification (at time of repair) and type of verification test used
9.    For Class I and Class II refrigerant stores only, follow-up repair verification (no sooner than 14 days after repair) and type of verification test used

**D.    Certifications**

The Refrigerant Manager shall keep on file a copy of the "EPA Section 608 Certification" for all in house and/or contractor technicians working on refrigerant equipment at his facility or facilities. Alternatively, EPA certification numbers shall be maintained electronically. Only those technicians with the proper type of EPA Certification are authorized to service refrigerant equipment.

**E.    Operating & Maintenance Practices**

Due to the various methods of operation and diverse types of refrigeration equipment at stores throughout Jewel, specific operating and maintenance practices are not addressed here, however the following Best Management Practices shall apply:

1.    Under no circumstance shall refrigerant be intentionally vented or released to the atmosphere.
2.    Refrigerant shall be purchased, sold, recovered, reclaimed, reused, transferred and/or destroyed in accordance with EPA regulations.
3.    Refrigerant shall be managed in accordance with all applicable EPA regulations.
4.    If a refrigerant leak is confirmed or suspected from a regulated system, the leak rate will be calculated in accordance with Section F, repairs will be made, and

---

[2] See also Section J (Recordkeeping). If facility data are managed electronically, the format will be similar to Form 2 but not necessarily identical. Jewel utilizes a third party provider for refrigerant data management services.

2

verified according to Section G, and other appropriate response actions may be identified as further described below.

**F.    Leak Rate**

1.    Leak rates will be calculated each time refrigerant is added to a system as follows:

$$\left( \frac{\text{pounds of refrigerant added}}{\text{full charge capacity}} \right) \div \left( \frac{\text{\# of days since refrigerant last added}}{365 \text{ days}} \right) \text{x } 100$$

2.    If the leak rate exceeds 35%, leak repairs will be verified according to the procedures in Section G, below.

3.    So long as the leak repair occurs within 30 days, as confirmed by a follow-up verification not sooner than 14 days after the repair, the leak rate is presumed to return to zero.

**G.    Leak Repairs and Follow-up Verification**

1.    All leaks in excess of the 35% leak rate shall be repaired within 30 days even if the system uses a non-ODS. When a repair is performed, Jewel will complete the Attached Form 2, and note the specific component of the system that is leaking. Components include, but are not limited to, gaskets, seals, joints, valves, tubing, coils or condensers.

2.    At the time a repair is made, the certified technician will perform an initial verification test, utilizing one of the following methods, to show the repair has been successful: bubble, electronic/ultrasonic, pressure, and dye inject.

3.    For Class I and Class II refrigerants stores only. Not earlier than 14 days following the initial verification test, the certified technician shall perform a follow-up verification test, using one of the same methods identified in paragraph G.2. above to demonstrate the repair has held.

4.    For commercial refrigeration systems using Class I or Class II refrigerant, if the repair cannot be made and substantiated by follow-up leak verification within 30 days of the initial leak discovery, then notification shall be made to USEPA within 30 days of the last failed follow-up verification test in accordance with the procedures in Section I, below. In addition, a Retrofit/Retirement Plan shall be prepared within 30 days of the failed follow-up verification test and it will include the implementation schedule (to be completed within one year). Units with non-ODS are not required to report, develop, or implement a retrofit/retirement plan.

5.    For commercial refrigeration systems with Class I or Class II refrigerant, if records show that any unit is repaired more than three (3) times in a year and has each time resulted in an exceedence of the 35% leak rate, then that unit must be replaced, retired, or retrofitted to use a non-ODS refrigerant.

3

## H.    Internal Reporting

Prompt notice to the corporate office shall occur when any of the following conditions apply:

- The leak rate percentage exceeds 35% for a refrigeration system.

- The leak rate percentage is less than 35% for a refrigeration system and there have been more than three refrigerant charges to the same system within the past 12 months.

- A leak repair fails the 14 day follow-up verification test following a repair, and the leak rate is not returned to below 35%.

- A leak from the same system occurs more than 3 times in one year.

Prompt corporate office notice is required in the above cases because they may trigger a written notice requirement to EPA and/or certain repair, replacement, or retrofit obligations.  Corporate notice shall be provided to both:

| Maintenance Department | Environmental Department |
|---|---|
| Box 20, Department 71704 | Box 20, Department 72405 |
| Boise, ID  83726 | Boise, ID  83726 |
| Ph:  (208) 395-5416 | Ph:  (208) 395-4793 |
| Fax:  (208) 395-6888 | Fax:  (208) 395-4508 |

Joint evaluation by the Refrigeration Manager and Maintenance Departments shall occur to determine if EPA notice is required.  Given the complex configuration of commercial refrigeration systems (i.e., many component parts), it is possible for leaks to occur at different locations within one system.  Management evaluation shall include a review of (1) details on the location of the leak(s); (2) the frequency and type of system repairs and refrigerant charges occurring over the prior 12 month period; and (3) an assessment of available repair, retrofit and replacement alternatives.

## I.    EPA Reporting

For commercial refrigeration systems using Class I or Class II refrigerants, EPA must be notified of a failed follow-up verification test within 30 days of the failed follow-up verification test.  If it is determined the leak cannot be repaired and the unit must be retrofitted or retired, such retrofit or retirement must be made within one year.  If repairs are complete and pass initial and follow-up verification within 30 days, no reports to USEPA are required.

If EPA notification is required, reports shall be submitted to the following address.

EPA Region 5

Attn:  Compliance Tracker

4

77 West. Jackson Blvd. (AE-17J)

Chicago, Il 60604

The Environmental Department will facilitate all communications to EPA and assist with development and implementation, if necessary, of a Retrofit/Retirement Plan.

The Refrigeration Manager and Store Director shall be responsible for ensuring the retrofit/retirement is implemented in a timely manner according to the Retrofit/Retirement Plan. Jewel's Corporate Maintenance Department shall monitor the Plan implementation and shall provide periodic updates to the Environmental Department.

## J.    Internal Record Keeping

During the Term of the Consent Decree for stores in the Chicago metropolitan area, Jewel shall monitor refrigerant use by means of an electronic data management system[3]. Refrigerant leak data and subsequent maintenance information shall be input into the data management system by authorized refrigeration service providers. The Refrigerant Manager is responsible for knowing how to access the web site and monitor site specific information.

| | |
|---|---|
| Attachment A | Refrigerant System - Store Inventory Summary (Form 1) |
| Attachment B | Refrigerant Usage Leak Check / Repair Report (Form 2) |

---

[3] Jewel currently utilizes a third party provider for refrigerant data management services.

CHI 10608006.5

# REFRIGERANT SYSTEM STORE INVENTORY SUMMARY (FORM 1)

ABS STORE# _____          **Survey Date:**_____

Jewel-Osco Address #: _____  City/State:_____

Store Director Name: _____  Phone: _____

New / Remodel Grand Opening Date (whichever is later): _____

Contractor: _____     **Technician Name:** _____

Contractor Phone:_____  **EPA Cert #:**_____

| Compressor System/Unit # | Compressor HP | List area or fixtures serviced | Type (see codes) | Refrigerant ASHRAE # R - ____ | Full Charge Capacity (total pounds) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Use additional forms if needed

Is there any refrigerant inventory stored on site? (Y/N) ____ If yes, indicate quantity: _____ and type (ASHRAE #): _____.

Does this store have an Energy Management System? (Y/N) _____; If **yes, circle make and model below:**
Com-Trol 5k/4k     Com-Trol 6k/4k     Danfoss/EMC     EIL RC/EC-1000     EIL TDC-32/64

Was there any evidence of a refrigerant leak during the survey? (Y/N) _____ **If yes, complete Form 2.**

---

**SYSTEM TYPE, REFRIGERANT**
System Type: **R**=Rack; **S**=Single Unit; **LT**=Low Temp; **MT**=Medium Temp; **AC**=Air Conditioning; **S/C**=Self–Contained

**ASHRAE**: common examples: R-12, R-502, R-22, R-134A, R-401A (MP-39), 402A (HP-80), R-404A (HP-62)

---

**NOTE TO VENDOR**: All refrigeration and air conditioning systems are to be inventoried, even those under 50 pound charge.
White Original Copy (1) – Within (7) Days -Return/Send To Jewel Store Maintenance 1955 W. North Ave. Melrose Park, IL 60160
Yellow Copy (2) – Attach to Work Report / Invoice – Vendor **must** include as a condition of payment.
Pink Copy (3) – **STORE COPY** – ATTN: STORE MGMT - FILE IN YELLOW REFRIGERANT TRACKING REPORT FILE

Environmental Tracking #: _____

Work Order # _____

(Assigned by Division)

## REFRIGERANT USAGE LEAK CHECK / REPAIR REPORT  (FORM 2)

ABS Store #:_____     **Jewel-Osco Midwest**  Service Date:_____

Store Address:_____  City/State:_____

Contractor: _____  EPA Cert. #_____

Phone #: _____  Technician Name: _____

(Print Name)

**Service Type(s):**     ☐ Add Refrigerant    ☐ Leak Check    ☐ Leak Repair

**Check all that apply:**   ☐ Initial Repair Verification    ☐ Follow-Up Repair Verification   ☐ Other Below:

Explain Other Service:_____

**Was refrigerant added? (Y/N) ____   If YES, complete the following:**

| Compressor System # and Description | *Refrigerant Type R-___ (ASHRAE #) | Amount Added (lbs) | Full Charge Capacity (FCC) | Was Leak Repaired? (Y/N) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

*R-12, R-22, R-502, R-134a, R-401A=MP-39, R-402A=HP-80, R-404A=HP-62, R-410A=A/C HFC

Exact Leak Location: Refg Sys. # / Rack Circuit # / Description: _____

Specific Location of Leak in System: _____

Were all identified leaks repaired?

____ Not Applicable (no leaks were identified or repaired during this service call)

____ Yes; Describe leak repair methods:_____

**Leak Repair Verification Test Method (Check One):** ☐ Electronic/Ultrasonic    ☐ Bubble

☐ Pressurization    ☐ Dye Injection

Complete the following *I certify, based on my sound professional judgement and verification testing as appropriate, that all identified leaks have been repaired in accordance with 40 CFR Part 82.*

Signature: _____  **(Same technician as identified above)**

____ **No, The leak was not repaired.** Describe why, actions planned, and note dates anticipated for completion:

_____

_____

Anticipated date of return trip: _____

Additional comments: _____

Store Director Printed Name (or other designated store manager): _____

Signature: _____  Date: _____

**NOTE TO STORE DIRECTOR:** Ensure this form is thoroughly completed and legible. Your signature below confirms that you have verified the service technician is EPA certified and that you understand the company policy and information on this form. If a leak is detected and not repaired at time of service, contact your designated Maintenance Department for further direction to ensure proper follow-up occurs. File copy 3 (Pink) of this form in the designated store **"Refrigerant Tracking Report" yellow folder.**

**NOTE TO VENDOR:** Original White Copy 1 – Within 7 days of service – Send to Jewel-Osco Store Maintenance Department. Yellow Copy 2 – Attach to Work Reports / Invoices as a condition of payment and processing. Pink Copy 3 – **STORE RECORDS COPY – Detach after signatures and leave with Store Management.**

Jewel-Osco Refrigerant Leak/Repair Report – Form 2.doc
Rev 11/02/04